Once again, I want to state for the record that Justice Overstreet is a member of this panel. He is not able to be here today. He will participate by fully listening to all the oral arguments and the briefing and the record. Counsel for the appellants, you may proceed. Good morning. May it please the Court. Counsel, my name is Jessica Hathaway. I represent Mr. Heath's case and Mrs. Heath's case. The first one being whether there is forfeiture, or in other words, whether this issue is preserved for appellate review. State of Illinois has not alleged that this issue is waived in any manner, so I believe this Court can look at this under a different light. I agree with Mrs. Heath's counsel that there is no record, no significant record, as to the factors that the Court must consider. Namely, whether the delay was intentional with the appellant that day. So that distinguishes his situation from that of Mrs. Heath, where he had produced counsel, counsel was there that day, had announced that he is ready, willing, and able to appear, enter an appearance for Mr. Heath, and significantly was just asking for a few days to appear. He was about 18 months old at this time. Also, one of the factors is, you know, the reasons for new counsel being necessary. When Mr. Heath fired his first lawyer, didn't Judge Brown reset it for 3 weeks to determine whether or not he had hired new counsel? Yes, sir. And then he had not hired new counsel in that setting? Yes. And he didn't need to reset it? And I've forgotten how long his delay was. Judge, in my notes, I'm sorry, I have 11 days after the 3 weeks, and then 3 weeks after that is when the public defender asked for more time. And that was, I believe, when the public defender made the representation that he was never going to be ready in January. He had asked, I believe, for a date in late February, and the state objected to that. So, you know, his later excuses that, well, it was because neither Mr. or Mrs. Heath had spoken to me, to me read as disingenuous. He had already, before the first of the year, before Judge Gross, represented that there's no, I'm not going to be going on. And I did want to touch on one other issue that I talked about in my brief, as to the reasons for needing new counsel, and that has to do with the potential for a conflict of interest in this case. The court could see from the case, this is a classic situation of constructive possession, where you have two individuals who the state alleges live in the same house. And this is a, again, a classic situation where there is, at minimum, a potential conflict of interest, and likely an actual conflict of interest, because it's a situation where parties are frequently pointing the finger at each other. Now, and here there are, there are allegations that the Williamses had first implicated only Jessica Heath, had said, we're only dealing with Jessica Heath, and then later indicated that they were dealing, or that both Jessica and Daryl Heath were involved. So, an inference can be made from the record that prior counsel, that's something that should have been brought to the party's attention, and an inference can be made that that could be the reason why they're having difficulties. Counsel may have been having difficulties formulating a proper defense for either of them, because of his duties toward each client. And so, when, the record reflects that when the Heath's attempted to retain my firm, that we immediately recognized that problem. So, I, there, that is an inference the court can make as to why the Heath's were having difficulties with both previously retained lawyer and the public defender. Public defender should not have been representing both of these individuals. Did either Mr. Heath or Mrs. Heath ever have contact with the public defender, outside of the courtroom? According to the representations of the public defender, the answer is no. Did anything in the record indicate that they did? No. And if I could speak to that just briefly. Many of us have acted as appointing counsel many, many times. As the record shows, this is a and would be a case where a significant amount of trial preparation can happen through reviewing the police reports and preparing an effective cross-examination of the police officers involved. Every lawyer that I know, knowing that he's appointed, would either take this matter of a If your client's not cooperating, it's lawyers who just don't prepare for trial or make other arrangements. So, the fact that he's saying that there was no contact, and I have no reason to doubt that, did not relieve him from his responsibility. And part of the, what shocks the conscience in this case, is that Mr. Heath had a situation where he had retained counsel, he was there, and needed just a few days. This wasn't going to push the case out three months or six months. So he had two lawyers who, one appointed, one who was ready to appear that day, neither of which could try the case that day. And so, you know, as I discussed in point four having to do with the sufficiency of the evidence, the truth-seeking function here was also thwarted. Justice was thwarted. Because we have only the facts in the most, you know, wide and most favorable to the state. None of this has been tested through cross-examination. Mr. Heath had waived his right to computation, has essentially enforced a waived right to counsel in the sense that there was really very little for a lawyer to do that day, which, incidentally, is structural error. So, you know, as the court may have noted in point four, even with no cross-examination, you know, no investigation to the Williamses, did you really say that to the police? Did you really make those statements? Things like that. We don't really know what happened. And, you know, even in the light most favorable, this is a closed case as far as sufficiency. There was mail in this house. Mr. Heath wasn't in the house at the time the search warrant was executed. So we had mail linking him to this residence. But other than the statements of the Williamses, that's it. That's where an effective lawyer who prepared an effective cross-examination is key to a fair trial. And as this Court knows, the stipulated bench trial is a problematic procedure. Most lawyers would never advise their client to proceed that way. Why? There's no benefit to waiving your right to cross-examination, particularly in a case like this. Yes, the constructive possession issue is a legal issue, but the facts that will support your legal argument have to be developed. They have to be investigated to some degree. I don't have a lot of time, but does anyone have questions right now? Thank you very much. Thank you, Counsel. You will have an opportunity for rebuttal. Counsel for the State. May I please call the Counsel? My name is Sharon Shanahan, and I represent the people of the State of Illinois. As to the first issue in his brief, the facts are very, very similar to his wife's argument. I'd like to basically touch on the differences in the case. It is true that there was an attorney who had entered his appearance on the day of the trial. However, to consider this attorney ready, willing, and able would be a stretch. I mean, he said he was not ready. And I think it's also important that he had told Mr. Heath that there was a big possibility that the continuance would not be granted. He told the defendant, and I'm quoting here, there's absolutely zero guarantee that the continuance would be granted, that this case is old, and this would not be the opportunity for him to bob and weave and avoid trial. So we have an attorney who's there, but he is not ready or able to try this case. I mean, he was retained the day before, and he entered his appearance the morning of. So I think it is a stretch to say that he was ready, willing, and able. Again, going back to these same cases that I cited to you in Mrs. Heath's argument, this court in Watson, when a defendant's request for a continuance is necessitated by his own lack of cooperation. I mean, these people went four months from the time they fired the first attorney in the middle of this second trial. Mr. Heath utterly refused to cooperate with appointed counsel. Now, there's kind of a, I didn't really understand, sort of a, there was a conflict of interest between Mrs. Heath and Mr. Heath. Counsel here this morning argues, first of all, that was certainly not raised at trial. It's not raised in the briefs. It's certainly not a per se conflict. So I don't know how that comes in here at all. And in any case, by the date of trial, Mr. Heath and Mrs. Heath did not have the same attorney. And then, again, here's an oral argument. Counsel sort of seemed to be making some kind of argument that the public defender should have been prepared to argue this case, even though his client had never met with him. And I don't know how he does that. I mean, you might know the law, but unless you know the facts, I don't know how you prepare for a trial. The other thing I wanted to note is that, again, seven pages of transcript before trial court, who's been, who's very familiar with this case. Defendant's wife said, excuse me, defendant said he was forced to find the money to hire two lawyers on short notice. Well, the defendant and his wife had four months to retain new counsel, so there was no short notice. Second of all, Mrs. Heath, on the day of trial, stated that their new counsel, in other words, Mr. Heath's new counsel, Mr. Swenson, who had entered his appearance that day on behalf of Mr. Heath only, that attorney, when they hired him, told her they needed new two attorneys. Said he would take both of them. That's just his opinion. That doesn't make it absolutely necessary. And again, they didn't start looking for a second attorney until the day before trial when their new attorney said, oh, I won't represent both of you. So the delay in hiring an attorney was not because of the need to hire two attorneys, if defendant's wife only found out that they needed another attorney the day before. So, again, the defendant kind of wanders into the sufficiency of the evidence argument here, and almost, I don't know, I got a little confused. It almost argued like there was some kind of inefficient, ineffective assistance of counsel argument, because the defendant says an effective lawyer would have never let this happen. Well, as I noted in the previous case, this case started out with Mr. Mansfield as private counsel. Mr. Mansfield was representing both defendants in the motion to quash. Once you have a bunch of drugs found in your car and found in your house and you lose a motion to quash, there's not a lot left. And Mr. Mansfield indicated that the case would probably be a stipulated bench trial. And so to say that an effective lawyer would have never let them agree to a stipulated bench trial, I think, is a stretch. And, moreover, I mean, we have mail addressed to the defendant found in the master bedroom of the house. The premises were under the control of the defendant. We have two witnesses who testified that they got their drugs from the defendant. Was the mail addressed to Daryl or Jessica or both? There was. There were documents, I'm going to say. I'm not sure I'm going to say mail. I'm just not recalling that particular fact addressed to both. And as I say, we also have the Williams' who both testified that they got the drugs from Mr. Heath. And so that kind of also defendant's argument is about the sufficiency of the evidence also kind of leads into the second issue as to whether they were forced into a stipulated bench trial. Now, the defendant did not raise any objection to this, did not include it in the post-trial motion, and did not argue plain error before this court. And as our Supreme Court has said in Hilliard, if you don't argue plain error, you can't prove plain error. Plain error puts the burden on the defendant. It's never been argued to this court. So this issue of whether they were forced into a stipulated bench trial is simply not true and not preserved. And in the other plain error, as I noted previously, having failed in a last-ditch motion to continue, defendant had three choices. He could put the state to approve of the charges at trial, he could plead guilty, or he could choose the wisdom of a stipulated bench trial in order to preserve a key constitutional issue, which was the denial of the motion to quash. And as I noted again before, Mr. Mansfield indicated that it would probably be a stipulated bench trial. And given the plethora of drugs, paraphernalia, and money found in that home, and the testimony of the witnesses, a stipulated bench trial was probably a wise course of action. So I don't see that there's any forcing anyone into that. And I would also note that after the motion to continue was denied, they took a break in the proceedings so that Mr. Swanson could meet with the defendant to consult with him. And he specifically told the trial court that he understood this, that he wanted a stipulated bench trial, that he knew what a stipulated bench trial was. Mrs. Heath, I would note, said, no, I'm not sure I know what that is. And the trial court says, okay, well, you and your attorney go out there and talk about it. But when he asked Mr. Heath the same question, he said he had spoken with his attorney about it, he understood it, and that's what he wanted to do. So there was no error there. If there are no other questions before this Court? Thank you, Counsel. Thank you. Rebuttal? Counsel states that the record doesn't reflect that the lawyer from my firm was ready, willing, and able to enter that day. That's just not true. He was asking for a few days to prepare, which I would submit is not a significant delay and is not, from anyone's perspective, something that would unduly delay the case. As prior counsel noted, one witness was there in Chester and the other one was in Belleville. Counsel makes much of the fact that the lawyer from my firm was unwilling to promise Mr. Heath that the court would continue the case. And, again, those are just the actions of ethical counsel who's recognized a conflict of interest and quickly helped Mr. and Mrs. Heath to secure counsel in a short period of time and was unwilling to make promises. State characterizes Mr. Heath's actions as being utterly unwilling to cooperate. And I want to touch quickly on the two cases that the State pointed this Court to just briefly, and that would be Miles' case and the Solomon case. The Solomon case, very briefly, is almost quaint and archaic. It's from the 60s. Mr. Solomon committed an armed robbery on December 28, 1961. He was tried on January 12, 1962. In that case, he was a member of a religious sect and wouldn't talk to his public defender in that short period of time because he wanted someone from his religion to represent him. The court ended up denying a continuance. The public defender represented him, and the Supreme Court of Illinois found that was fine. I would say to this Court, those facts are essentially useless to us now. We have a different standard for what's appropriate as far as choice of counsel, among other things. And Miles' case is very different. It was a case that was represented by private counsel for about a year and a half. I would say Miles' case is the classic example of the uncooperative and belligerent defendant. He refused to talk to his lawyers for a long period of time. Counsel notably never withdrew. Counsel filed what appeared to be a writ to try and get off the case, but meanwhile continued to file numerous motions for him. Defendant threatened his lawyer over the phone through anonymous phone calls. Defendant refused to sit next to him and refused to actually enter the courtroom. So that's obviously a very different situation than what we have here. State, in both cases this morning, has treated a four-month period as exceptionally long, but to me that shows somewhat of a heartless indifference to the difficulties of your average individual to hire lawyers and their two lawyers. She also takes issue with my characterization of this as short notice, but the record will reflect that on the one hand the State says hire counsel the day before. That is true. The record also reflects that's when these people were advised that there was a conflict. So that was short notice, to hire two lawyers in essentially one day and produce the money to do that. I think State has characterized it to say that Mr. Heath didn't start looking for lawyers the day before trial. It's clearly not true. The record shows that he was not able to attain a lawyer until that day. It's very different. I believe that's all I have unless the Court has any other questions. No questions. Thank you, Counsel. Thank you. The Court will take the matter under advisement, issue a decision in due course.